**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JESUS ALBERTO ZELAYA, *on behalf of himself, FLSA Collective Plaintiffs, and the Class,*

Plaintiff,

v.

FOREVER NEW CONSTRUCTION INC., PANTELIS TSEKOS, *and* ANDREAS TSEKOS

Defendants.

Case No.:

**CLASS AND COLLECTIVE ACTION COMPLAINT**

Jury Trial Demanded

Plaintiff, JESUS ALBERTO ZELAYA (hereinafter, "Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this class and collective action Complaint against FOREVER NEW CONSTRUCTION INC. (hereinafter "Corporate Defendant"), PANTELIS TSEKOS, and ANDREAS TSEKOS (collectively, "Individual Defendants"; and, together with Corporate Defendant, "Defendants"), and states as follows:

## INTRODUCTION

1. Plaintiff alleges that, pursuant to Fair Labor Standards Act as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), he and others similarly situated are entitled to recover from Defendants:

(1) unpaid overtime, due to a fixed salary; (2) statutory penalties; (3) liquidated damages; and (4) attorneys' fees and costs.

2. Plaintiff further alleges that, pursuant to New York Labor Law ("NYLL"), he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to a fixed salary; (2) statutory penalties; (3) liquidated damages; and (4) attorneys' fees and costs.

3. Plaintiff additionally alleges that, pursuant to the Internal Revenue Code, 26 U.S.C. § 7434, he and others similarly situated are entitled to damages and fees and costs in this matter because Defendants willfully filed fraudulent tax information forms with the Internal Revenue Service ("IRS").

4. Plaintiff further alleges that Defendants breached their contract with Plaintiff and others similarly situated by failing to pay employer payroll taxes for Plaintiffs and Class Members, as required by the Federal Insurance Contribution Act ("FICA").

5. Plaintiff also alleges that, in retaining these sums for themselves, Defendants unjustly enriched themselves at the expense of Plaintiffs and Class Members.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343 and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

7. Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

8. Plaintiff, JESUS ALBERTO ZELAYA is a resident of Queens County, New York.

9. Corporate Defendant FOREVER NEW CONSTRUCTION INC. ("The Company") is a domestic business corporation that provides general contracting services to individuals and businesses in New York City. The Company is organized under the laws of the State of New York, with its principal place of business and address for service of process both located at 2230 36th St Fl 1 Astoria, NY 11105.

10. Individual Defendant PANTELIS TSEKOS is an owner and co-founder of Corporate Defendant. *See* **Exhibit A** and **C.** PANTELIS TSEKOS exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs, and the Class. PANTELIS TSEKOS goes to many of the work sites of the Company and oversees and directs construction teams. PANTELIS TSEKOS exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs, and the Class. At all times, employees of the Company may complain to PANTELIS TSEKOS directly regarding any of the terms of their employment, and PANTELIS TSEKOS would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. PANTELIS TSEKOS exercised functional control over the business and financial operations of the Company. PANTELIS TSEKOS had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs, and Class members, and could reprimand employees.

11. Individual Defendant ANDREAS TSEKOS is an owner and co-founder of Corporate Defendant. *See* **Exhibit B** and **C.** ANDREAS TSEKOS exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs, and the Class.

ANDREAS TSEKOS frequently visits the work sites of the Company and directly oversees and directs construction. ANDREAS TSEKOS exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs, and the Class. At all times, employees of the Company may complain to ANDREAS TSEKOS directly regarding any of the terms of their employment, and ANDREAS TSEKOS would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. ANDREAS TSEKOS exercised functional control over the business and financial operations of the Company. ANDREAS TSEKOS had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs, and Class members, and could reprimand employees.

12. At all relevant times, Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of FLSA.

13. At all relevant times, the work performed by Plaintiff FLSA Collective Plaintiffs, and Class members was directly essential to the business operated by Defendants.

14. Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

15. Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b) on behalf of all current and former non-exempt employees, including painters, laborers, and construction workers among others, employed by Defendants on or after

the date that is six years before the filing of this complaint, as defined herein ("FLSA Collective Plaintiffs").

16. At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them their proper wages. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs: (i) unpaid overtime, due to due to a fixed salary; (ii) liquidated damages; and (iii) attorneys' fees and costs. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

17. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of FLSA, 29 U.S.C. 216(b). FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

18. Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23 on behalf of all current and former non-exempt employees, including painters, laborers, and construction workers, among others employed by Defendants on or after the date that is six years before the filing of this complaint, as defined herein (the "Class Period").

19. All said persons, including Plaintiff, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are able to be determined from the records of Defendants. The hours assigned and worked, the position held, and

rates of pay for each Class member are also determined from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

20. The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number is based are presently within the sole control of Defendants, and there is no doubt that there are more than forty members of the Class.

21. Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants of: (i) unpaid wages, including unpaid overtime, due to a fixed salary; (ii) failing to provide proper wage statements per requirements of NYLL; and (iii) failing to properly provide wage notices to Class members, at the date of hiring and annually, per requirements of NYLL.

22. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

23. Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented Plaintiffs in wage and hour cases.

24. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

25. Defendants and other employers throughout the state violate NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who

are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

26. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a. Whether Defendants employed Plaintiff and the Class within the meaning of NYLL;

b. What are and were the policies, practices, programs, procedures, protocols, and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and Class members properly;

c. At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and Class members for their work;

d. Whether Defendants properly notified Plaintiff and Class members of their hourly rates;

e. Whether Defendants failed to properly compensate Plaintiff and Class members for all hours worked, including overtime hours, due to compensating them on an illegal fixed salary basis;

f. Whether Defendants provided wage and hour notice to employees, including, among others, the rate of compensation, trade name of employer, pursuant to the requirements of NYLL; and

g. Whether Defendants provided proper wage statements to employees as required under NYLL.

## STATEMENT OF FACTS

27. On or about August 2019, Plaintiff JESUS ALBERTO ZELAYA ("Plaintiff") was hired by Defendants to work as a laborer for Defendants' FOREVER NEW CONSTRUCTION INC. During his employment Plaintiff was assigned to perform work for Defendants at hundreds of different sites throughout New York City. Such sites included, but were not limited to, residential remodels, commercial building, installations, and various other construction and remodeling jobs throughout New York City. Plaintiff was employed by Defendants until May 2024.

28. Throughout the entire duration of his employment with Defendants, Plaintiff held the title of laborer. His duties included, among others, cutting and hanging drywall, painting, installing fixtures, and assisting on projects as needed. On a daily basis, Plaintiff was scheduled by his foreman to work at different job sites around New York City. At each site, Plaintiff had the same foreman and was assigned to a work group with other laborers. Plaintiff's team was generally the same, regardless of to which site he was assigned, although, at times, laborers from other projects were assigned to jobs with Plaintiff's group. FLSA Collective Plaintiffs and Class members were similarly assigned on a daily basis to work at different job sites.

29. From the beginning of his employment until January of 2024, Plaintiff worked Monday through Friday, from 9:00 a.m. until 5:00 p.m., with a sixth full day on Saturday every other week, for an average of forty-four (44) hours per week. From January 2024 until the end of his employment on May 10, 2024, Plaintiff worked Monday through Friday from 8:00 a.m. to 8:00 p.m., with an additional sixth day on Saturday every other week, for an average total of sixty-four (64) hours per week. FLSA Collective Plaintiffs and Class Members were similarly scheduled to work more than forty hours each week.

30. From the start of Plaintiff's employment until around January 2023, Plaintiff was compensated on a weekly basis with a company check without a pay stub at a daily fixed rate of one hundred and fifty dollars ($150.00) per day, regardless of how many hours he worked each day. From around February 2023 until the end of his employment, he was compensated in a similar manner two hundred dollars ($200.00) per day. FLSA Collective Plaintiffs and Class members were similarly compensated at daily fixed rates without pay stubs regardless of how many hours they worked each day. There was never an agreement between Plaintiff and Defendants that this fixed salary scheme would cover overtime hours. FLSA Collective Plaintiffs and Class Members also did not have an agreement with Defendants that their fixed daily pay would cover overtime hours. At times during his employment, Defendants also compensated Plaintiff in cash rather than by Company check. FLSA Collective Plaintiffs and Class Members were similarly compensated at various times in cash rather than by Company check.

31. Further, throughout the duration of Plaintiff's employment, in spite of his regular schedule, Plaintiff was often required to stay beyond his scheduled end time. This resulted in Plaintiff working significant overtime hours. However, because of his fixed daily rate, Plaintiff was never compensated for the additional hours, including overtime hours, that he worked beyond his scheduled shift. Similarly, FLSA Collective Plaintiffs and Class members were regularly required to work significant hours beyond their regular scheduled shifts, but were not compensated for these additional hours, including overtime hours.

32. Plaintiff never clocked in or out. Because of his fixed daily rate, Defendants did not track his hours, only his attendance for the day. As a result, Plaintiff was unable to accurately record his actual hours worked each day. This is reflected in his pay stubs, which were simply company checks, with no breakdown of regular and overtime hours worked, rates of pay, and

withholdings. *See* **Exhibit D.** Defendants' compensation scheme failed to compensate Plaintiff his owed overtime premium for all hours worked over forty in a workweek. FLSA Collective Plaintiffs and Class members were similarly subjected to this same compensation scheme and not compensated their proper overtime premiums for hours worked over forty in a workweek.

33. As a result of Defendants paying Plaintiff, FLSA Collective Plaintiffs, and Class Members in checks and cash, Defendants failed to provide Plaintiff, FLSA Collective Plaintiffs, and Class Members with accurate IRS Forms W-2 for all the tax years of their employment and failed to properly record, account for, and report to the IRS all monies paid to Plaintiff, FLSA Collective Plaintiffs, and Class Members. In failing to account for these monies in their IRS filings, Defendants filed fraudulent information in violation of 26 U.S.C. § 7434. Under 26 U.S.C. § 7434(b), Defendants are liable for at least five thousand dollars to Plaintiff, FLSA Collective Plaintiffs, and Class Members for each fraudulent filing, which would have to be at least once a year.

34. In violating the Internal Revenue Code by failing to provide proper W-2 forms, Defendants also breached their contract with Plaintiff and Class Members to pay the employer's share of Social Security and Medicare taxes for each employee.

35. Defendants also unjustly enriched themselves at the expense of Plaintiff and Class Members by retaining monies that should have been remitted to the IRS on Plaintiff's and Class Members' behalf.

36. As a result, Plaintiff and Class Members will either (1) be liable to the IRS for the employer's share of FICA taxes or (2) upon retirement suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

37. The employer's share of Social Security taxes is 6.2%. The employer's share of Medicare taxes is 1.45%. Accordingly, Defendants must compensate Plaintiff and each Class member 7.65% of all their earnings from Defendants beginning six years prior to the filing of this Complaint.

38. Even if Defendants could show that they paid some employees a part of their wages in check and filed the appropriate W-2s for those checks, Defendants would remain liable to those employees for failing to pay FICA taxes on the cash portion of their wages.

39. Plaintiff and Class Members never received a wage notice from Defendants. They also did not receive accurate wage statements from Defendants, due to Defendants' improper fixed salary. The paystubs that Defendants provided did not show the hours worked. *See* **Exhibit D**.

40. In violation of the Wage Theft Protection Act ("WTPA")—incorporated into NYLL—Defendants knowingly and willfully operated their business with a policy of not providing wage notices to Plaintiff and Class Members at the beginning of their employment with Defendants.

41. Defendants further violated the WTPA by failing to provide Plaintiff and Class Members with accurate wage statements, because wage statements that do not reflect the actual number of hours worked by the employee do not satisfy the requirements of the WTPA. *See Shi Yong Li v. 6688 Corp.*, 2013 U.S. Dist. LEXIS 148020, *6 (S.D.N.Y. Sept. 27, 2013) ("The wage statements provided failed to accurately indicate the amount of time *actually* worked by tipped employees") (emphasis added); *Copper v. Cavalry Staffing, LLC*, 132 F. Supp. 3d 460, 468 (E.D.N.Y. 2015) (holding that "the 'number of overtime hours' that appears on the wage statement should include every hour *actually* 'worked' by the employee") (emphasis added); *Campos v. Bkuk 3 Corp.*, 2021 U.S. Dist. LEXIS 151528, *30 (S.D.N.Y. Aug. 10, 2021) ("Thus, when

paystubs were received, they were not accurate insofar as they did not accurately reflect the hours *actually* worked") (emphasis added).

42. In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs*., 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20, 2020)

43. Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Class Members. Defendants' conduct actually harmed Plaintiff and Class Members. Defendants' failure to provide wage notices and paystubs listing all hours actually worked and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff's and Class Members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendants' failure to provide proper wage notices and

wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

44. Had the wage statements Defendants provided to Plaintiff and Class Members accurately listed the total number of hours Plaintiff and Class Members actually worked, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours the employee actually worked. Either possibility would have allowed Plaintiff and Class Members to vindicate their rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

45. The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiff and Class Members. This delayed payment caused Plaintiff and Class Members to struggle to pay bills and other debts.

46. Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices and wage statements as required by NYLL.

47. The direct effect of understating the number of hours an employee worked is to reduce the wages that employees are listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. See *Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-2 and paystub dated 12/24/20, is $130,321.30"); *T.F. v. N.F.,* 820 N.Y.S.2d 846,

846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[1]

48. The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co*., 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

49. "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, No, 2023 U.S. Dist. LEXIS 38163, at 18, 2023 WL 2388728, at *8 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paystubs. The paystub processing service *realcheckstubs* explains: "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y.*, LLC, 2023 U.S. Dist. LEXIS 122504, *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4 2022 WL 2751871, at *2 (S.D.N.Y. July 14, 2022)).

50. Here, it is clear that Defendants' failure to provide Plaintiff and Class Members with accurate wage statements entailed "concrete, downstream consequences" involving monetary injury. Had the number of hours been accurately reported for a given pay period, Defendants' automatic payroll system would have correspondingly increased the wages due for that period, which in turn would have been reflected in the W-2s that Defendants submitted to the IRS on behalf of Plaintiff and Class Members. That, in turn, would have increased Plaintiff's and Class Members' entitlement to social security benefits. Because the inaccuracy prevented this outcome, it constitutes an injury sufficient to provide Plaintiff with Article III standing.

51. Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id*. "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id*.

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

52. The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiff and other employees rather than merely misreporting their income.

But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id*. Plaintiff and Class Members lost benefits by virtue of how Defendants reported their income, and how Defendants reported employees' income was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

53. Whether or not any Class members are presently eligible for social security benefits is legally immaterial. *See id*. ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

54. The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

> The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.
>
> All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income.

*Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993)

55. Here, the problem is not merely challenging but insurmountable. Plaintiff and Class Members cannot even attempt to have their earnings report corrected because Defendants *did*

report what they actually paid Plaintiff and Class Members. The problem, rather, is that Plaintiff and Class members were underpaid. Yet the ultimate effect is the same—reduced social security eligibility. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiff was irreversibly injured with respect to his social security benefits as soon as Defendants sent his W-2 to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff and Class members the proper overtime wages at a rate that is at least one-and-one-half times the regular rate of pay for hours worked in excess of forty per workweek due to paying a fixed salary and due to time shaving, in violation of the FLSA and NYLL

56. Defendants knowingly and willfully operated their business with a policy of not providing wage and hour notice to Plaintiff and Class members as required under the NYLL.

57. Defendants knowingly and willfully operated their business with a policy of not providing proper wages statements to Plaintiff and Class members as required under the NYLL, as the wage statements did not accurately reflect the number of hours worked by employees.

58. Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class members in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF FAIR LABOR STANDARDS ACT

59. Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as fully set forth herein.

60. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a).

61. At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of FLSA.

62. At all relevant times, Corporate Defendants had gross annual revenues in excess of $500,000.

63. At all relevant times, Defendants had a policy and practice of failing to pay Plaintiff and FLSA Collective Plaintiffs at the proper overtime rate for their hours worked over forty hours a week due to improperly compensating them on a fixed salary basis.

64. Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will seek leave of Court to amend this Complaint to set forth the precise amount due.

65. Defendants knew of and/or showed a willful disregard for the provisions of FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their proper wages, when Defendants knew or should have known such was due.

66. Defendants failed to properly disclose or apprise Plaintiff or FLSA Collective Plaintiffs of their rights under FLSA.

67. As a direct and proximate result of Defendants' willful disregard of FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to FLSA.

68. Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, including unpaid overtime, due to a fixed salary basis; unpaid wages, plus, an equal amount as liquidated damages.

**COUNT II**

**VIOLATION OF NEW YORK LABOR LAW**

69. Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

70. At all relevant times, Plaintiff and Class members were employed by Defendants within the meaning of NYLL, §§ 2 and 651.

71. At all relevant times, Defendants had a policy of improperly compensating Plaintiff and Class Member on a fixed salary basis.

72. Defendants violated Plaintiff's and Class members' rights by failing to pay overtime wages for hours worked in excess of forty per workweek at the proper overtime rate that is at least one-and-one-half times the regular rate of pay due to a fixed salary, in violation of the NYLL.

73. Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Class members with wage notice, at date of hiring and annually thereafter, as required under the NYLL.

74. Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Class members with proper wage statements as required under the NYLL. Defendants provided fraudulent wage statements that failed to accurately reflect the number of hours worked and the proper compensation for Plaintiff and Class members.

75. Due to Defendants' NYLL violations, Plaintiff and Class members are entitled to recover from Defendants unpaid wages, including overtime, due to a fixed salary; unpaid wages, including overtime, reasonable attorneys' fees; liquidated damages; statutory penalties; and costs and disbursements of the action, pursuant to NYLL.

**COUNT III**

**CIVIL DAMAGES FOR FRAUDULENT FILING OF INFORMATION RETURNS UNDER 26 U.S.C. § 7434(a)**

76. Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

77. Under the Internal Revenue Code, "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such person may bring a civil action for damages against the person so filing such return." 26 U.S.C. § 7434(a).

78. By failing to provide Plaintiff and Class Members with accurate IRS Forms W-2 for all of the tax years during which they were employed by Defendants and failing to properly record, account for, and report to the IRS all monies paid to Plaintiff and the Class as wages, Defendants filed fraudulent information returns with the IRS, in violation of 26 U.S.C. § 7434.

79. Defendants knew they had a legal duty not to misrepresent to the IRS the amount of money they were paying employees. Defendants' actions were willful violations of, or showed reckless disregard for, the provisions of the Internal Revenue Code.

80. Pursuant to 26 U.S.C. § 7434(b)(3), Defendants are also liable to Plaintiff for reasonable attorneys' fees.

## COUNT IV

## BREACH OF CONTRACT

81. Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

82. "In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance … This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract … [T]he duties of good faith and fair dealing … encompass any promises which a reasonable person in the position of the promisee would be justified in understanding were included [in the contract]." *511 W. 232nd Owners Corp. v. Jennifer Realty Co*., 98 N.Y.2d 144, 153, 773 N.E.2d 496, 500-501, 746 N.Y.S.2d 131, 135-136, 2002 N.Y. LEXIS 1579, *10-11 (2002).

83. When Plaintiff and Class Members accepted offers of employment form Defendants, the parties entered a contract, and the covenant of good faith and fair dealing implicit therein required Defendants to pay Plaintiff and Class Members in accordance with all applicable laws. This involved, *inter alia*, a duty by abide by the Internal Revenue Code and pay all required FICA taxes.

84. Defendants breached this duty when they decided to pay Plaintiff and Class Members in cash and not file proper W-2. As a result, Plaintiff and Class Members lost part of the benefit of the bargain for which they contracted, suffering a loss in the amount of the FICA taxes that Defendants should have paid on their behalf but did not.

## COUNT V

## UNJUST ENRICHMENT

85. Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

86. To state a claim for unjust enrichment, a plaintiff must allege that: “(1) the [defendant] was enriched, (2) at [plaintiff's] expense, and (3) that it is against equity and good conscience to permit the [defendant] to retain what is sought to be recovered.” *Georgia Malone & Co., Inc. v Rieder*, 19 NY3d 511, 516, 973 NE2d 743, 950 NYS2d 333 (2012) (internal quotations omitted).

87. Defendants were unjustly enriched when they kept for themselves money that should have been paid to the Internal Revenue Service as Defendants’ employer FICA contribution. Such came at the expense of Plaintiff and Class Members because they will either (1) be liable to the IRS for the employer’s share or (2) upon retirement suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

88. Accordingly, all sums that Defendants should have paid to the IRS should be disgorged from Defendants and transferred to Plaintiff and Class Members.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of himself, FLSA Collective Plaintiffs and Class members respectfully requests that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under FLSA and NYLL;

b. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by

law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. An award of unpaid wages, including overtime, due to a fixed salary due under the FLSA and NYLL;

d. An award of unpaid wages, including overtime compensation at the proper rate of one-and-one-half times the regular rate of pay for hours worked in excess of forty per workweek, due under the FLSA and NYLL;

e. Contractual damages for Defendants' failure to keep their promise to abide by the Internal Revenue Code and fund Plaintiff's and Class Members' retirement through FICA contributions;

f. Disgorgement from Defendants of all illegally retained sums that should have gone into FICA contributions;

g. An award of statutory penalties as a result of Defendants' failure to comply with NYLL wage notice and wage statement requirements;

h. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay compensation for all hours worked and overtime compensation for all hours worked over forty per workweek, pursuant to the FLSA;

i. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay compensation for all hours worked and overtime compensation for all hours worked over forty per workweek, pursuant to the NYLL;

j. An award of five thousand dollars in statutory damages to Plaintiff and each Class member under 26 U.S.C. § 7434;

k. An award of prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees;

l. Designation of Plaintiff as Representative of FLSA Collective Plaintiffs;

m. Designation of this action as a class action pursuant to F.R.C.P. 23;

n. Designation of Plaintiff as Representative of the Class; and

**o.** Such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Date: January 9, 2025

Respectfully submitted,

By: */s/ CK Lee*

C.K. Lee, Esq.
**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*